IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEXTER TRUJILLO,

       Plaintiff,

v.                                                                                          CV 13-1083 WPL

CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Dexter Trujillo filed an application for Disability Insurance Benefits on December 8, 2009, and for Supplemental Security Income on December 21, 2009. (Administrative Record ("AR") 14.) He alleges disability beginning May 11, 2009, due to human immunodeficiency virus ("HIV"); problems with his lower back and right leg and foot, including plantar fasciitis of the right foot; anxiety; and falling asleep. (AR 187, 202.) Administrative Law Judge ("ALJ") Michelle Lindsay held a disability hearing on April 30, 2012. (AR 30-60.) On July 26, 2012, the ALJ determined that Trujillo was not under a disability as defined by the Social Security Act and was therefore not entitled to benefits. (AR 15-29.) Trujillo filed an appeal with the Appeals Council, but the Council declined his request, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (AR 1-8.)

Trujillo sought review of the SSA's decision (Doc. 1) and filed an opposed Motion to Reverse or Remand Administrative Agency Decision (Doc. 23) and supporting Memorandum (Doc. 24). The Commissioner of the SSA ("Commissioner") responded (Doc. 25), and Trujillo

filed a reply (Doc. 26). After having read and considered the entire record and the relevant law, I grant Trujillo's motion and remand this case to the SSA for proceedings consistent with this opinion.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214. However, substantial evidence does not require a preponderance of evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Hamlin*, 365 F.3d at 1214 (quotation omitted). The Court may reverse and remand if the ALJ has failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a

claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. *Id.* The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Trujillo is a fifty-three-year-old man with a high-school education. (AR 152, 203.) Trujillo has past work experience in security, as a custodian, and reading to children. (AR 35, 213.) Trujillo fell at work on May 7, 2009, reportedly injuring his lower back and right foot. (AR 407, 790.)

I focus my discussion of the factual background relating to those issues raised in the motion to remand. While the record includes information about both physical and mental problems, this discussion focuses on Trujillo's physical issues.

The earliest medical record in the AR is a radiology report from May 2, 2002, indicating mild arthritis.[1] (AR 588.) Trevor Hawkins, M.D., Trujillo's primary care provider, referred Trujillo for the testing. (*Id.*)

A December 8, 2005, pain management contract indicates that Trujillo had lower back, right knee, and right shoulder pain. (AR 533.) The record shows that Trujillo went to physical therapy beginning as late as June 22, 2009, and continuing at least through 2011. (AR 440, 801.)

Trujillo had an MRI of his lumbar spine on July 11, 2009, which showed mild disc disease. (AR 364.) An x-ray of his right foot on July 16, 2009, showed mild degenerative disease and a small plantar calcaneal spur. (AR 584.) At physical therapy on July 21, 2009, Trujillo reported less pain in his hips and leg but was having difficulties walking and kneeling to do activities of daily living around his home. (AR 582.)

On December 29, 2009, Trujillo complained to Dr. Hawkins of a high level of pain in his low back and right foot, though the reported pain was "higher than his countenance would reveal." (AR 790.)

Trujillo completed a function report on February 8, 2010. (AR 225-33.) Trujillo stated that he could not drive by himself; someone goes with him or drives him. (AR 227.) He asserted that he could lift no more than five pounds, that he could not reach his back or feet, that standing for over twenty minutes hurt significantly, that he could not walk more than fifty steps or sit

---

[1] Materials from AR page numbers 492-821 were submitted to the Appeals Council by Trujillo's attorney and were not before the ALJ for review. (*See* AR 4.)

more than five minutes without pain, that he needed to rest for fifteen minutes before resuming walking, that he walked with a cane, that he could not pull zippers anymore due to loss of strength in his arms and hands, and that he had difficulty doing daily chores. (AR 227-32.) He went grocery shopping once a week and ate prepared foods, including cooked food given to him by family members. (AR 228-29.) Trujillo tried to eat lunch around 2:00 p.m. if his pain was not too severe, and he walked to the post office each day at 3:00 p.m. (AR 226.) He could do light dusting, wash dishes, and vacuum with a light vacuum cleaner. (AR 228.) He enjoyed reading, baking cookies, and arts and crafts, such as doing bead work for half an hour before his back pain became too bad. (AR 230.) Trujillo attended church four times per week. (*Id.*)

On March 8, 2010, W. Miller Logan, M.D., performed a mental RFC assessment. (AR 378-95.) Dr. Logan noted that Trujillo took his HIV medications regularly but often did not take his other medications. (AR 380.) Dr. Logan found that Trujillo had moderate restrictions in activities of daily living. (AR 392.)

On March 12, 2010, John Vorhies, Jr., M.D. performed a physical RFC assessment. (AR 396-403.) Dr. Vorhies determined that Trujillo could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and push or pull without limitation, except as provided in the lifting and carrying limitations. (AR 397.) Dr. Vorhies found that Trujillo's degenerative disc disease was mild and age appropriate, that his plantar fasciitis was a self-limited condition, and that his HIV was well-controlled and asymptomatic. (*Id.*) Dr. Vorhies suggested that it might be wise for Trujillo to avoid heavy lifting, but that there was no reason to limit other activities. (*Id.*) He concluded that Trujillo's alleged functional limitations were only partially credible. (AR 401.)

On April 28, 2010, Trujillo stated in a disability report that his pain had become much worse, that he experienced a lot more fatigue, and that he went through dizzy spells. (AR 238.) Trujillo wrote that he was in two car wrecks due to drowsiness and dizziness while driving. (AR 244-45.) In an August 17, 2010, disability report, Trujillo reported worsening lower back pain and pain in the arch of his right foot. (AR 248.)

On October 15, 2010, Jonathan Beamer, M.D., whom Trujillo had been seeing for psychological issues, stated that Trujillo felt like his physical therapy was helping significantly, such that he was more active and sleeping better. (AR 462.) Trujillo again told Dr. Beamer on January 1, 2011, that the pain in his foot and neck was lessened with movement and physical therapy. (AR 460.) On March 16, 2011, Trujillo reported that he was not sleeping well, sleeping only a couple of hours at a time. (AR 455.) Dr. Beamer noted on March 30, 2011, that Trujillo continued to be active. (AR 454.) For example, Trujillo cleaned out the ditch in the acequia the week prior.[2] (*Id.*) On June 10, 2011, Dr. Beamer noted that Trujillo worked in his garden regularly and walked around town. (AR 451.) While Trujillo continued to complain about his foot, Dr. Beamer wrote that the pain did not seem like it was stopping him as much. (*Id.*) Trujillo reported that he was sleeping well and that his appetite was good. (*Id.*)

Trujillo complained to Dr. Hawkins on July 5, 2011, that he was still having pain in his right foot. (AR 449.) Dr. Hawkins instructed Trujillo to wear a boot for four weeks. (*Id.*) At a July 20, 2011, visit to Dr. Beamer, Trujillo stated that he was getting around fine and still working in his garden. (AR 448.) On July 26, 2011, Dr. Hawkins diagnosed Trujillo with

---

[2] "The traditional *acequias* and the water they carry symbolize the spirit of a community. One of the rites of spring along the upper Rio Grande is the annual cleaning of the *acequias* from the *acequia madre*, or mother channel, down to each field. Everyone is obligated to participate in the effort." Enrique Lamadrid, *Acequias*, SMITHSONIAN EDUCATION, http://www.smithsonianeducation.org/scitech/impacto/graphic/rio/english/natural_acequias.html (last visited May 26, 2015).

nocturnal leg cramps and recommended calf stretches, hydration, magnesium, potassium, and calcium. (*Id.*) On August 15, 2011, Trujillo reported that he returned from a trip to Wisconsin with his uncle and had a good time. (AR 446.) Yet Trujillo continued to complain of chronic pain in his leg and foot and was walking with a boot. (*Id.*) The following day, on August 16, 2011, Trujillo informed Dr. Hawkins that he did not feel the boot was helping and that he had experienced two falls. (AR 444.)

On August 27, 2011, Trujillo saw both Dr. Hawkins and Dr. Beamer and reported that a cortisone shot in his right foot had good results. (AR 442-43.) However, Trujillo still complained of back and neck pain. (AR 442.) On October 25, 2011, Trujillo told Dr. Hawkins that he was not sleeping well and that he was having pain in his head, neck, knees, and feet. (AR 440.) Dr. Hawkins recommended that Trujillo restart physical therapy. (AR 441.) On November 9, 2011, Trujillo stated that he had missed physical therapy but would restart again at the end of the week. (AR 440.) Trujillo reported continued pain in his right foot and neck on November 22, 2011. (AR 439.)

Dr. Hawkins completed an evaluation of Trujillo's exertional limitations on November 23, 2011. (AR 431.) Dr. Hawkins found that Trujillo could frequently and occasionally lift or carry less than ten pounds, stand or walk for less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, and push or pull with limitations in the lower extremities. (*Id.*) Further, Trujillo had to periodically alternate between sitting and standing to relieve pain or discomfort and lie down periodically during the day. (*Id.*) At the bottom of the page, Dr. Hawkins explained that Trujillo "has generalized osteoarthritic pain plus a tear in his right plantar fascia." (*Id.*)

On November 29, 2011, Trujillo complained to Dr. Hawkins again of pain. (AR 437.) Dr. Hawkins wrote that Trujillo "kind of acknowledged" that he had a lot of emotional pain that was turning into physical pain. (*Id.*)

Dr. Hawkins wrote a letter to the SSA on April 19, 2012. (AR 432.) Dr. Hawkins stated that he had been seeing Trujillo as a patient since November 1995. (*Id.*) Dr. Hawkins described Trujillo's symptoms, which "include, but are not limited to[,] fatigue, inability to sleep, anxiety and depression, poor memory and difficulty in concentrating. He also has developed pain in multiple joints, especially in his lower extremities, and HIV related lipohypertrophy." (*Id.*) Further, "[d]espite treatment for HIV, these symptoms have persisted and now have decreased his ability to function on a daily basis. His symptoms are such that [he] has difficulty in finishing tasks such as cleaning the house, attending social and community activities, or preparing food." (*Id.*) Dr. Hawkins requested that the SSA contact him at the Southwest CARE Center with any questions. (*Id.*)

### HEARING TESTIMONY

Trujillo testified that he had been reading to children for one to two hours at a time, for a total of five hours per week, at his local public library until about two to three months prior to the hearing. (AR 35-36.) Trujillo stopped working at the library because the work became too stressful. (AR 37.) However, he was still doing some volunteering—reading with kids and doing small art projects. (AR 51.) Trujillo testified that he also used to work in maintenance and security at the Georgia O'Keefe Museum and as a mail clerk and assistant for the United States Postal Service. (AR 37-38.)

Trujillo testified that he became disabled on May 11, 2009. (AR 38.) He stated that he could not function, as he was limping, in pain, and experiencing mental anguish. (AR 38-39.)

Trujillo explained that he had trouble sleeping, the he was full of anxiety, that his neck and back hurt, and that someone has to drive him places because, he testified, "[d]riving just kills me." (AR 40.) His cousin drove him to the hearing. (*Id.*) Trujillo was receiving cortisone injections for his feet to help with the pain. (*Id.*)

Trujillo stated that he has difficulty walking or standing for long. (AR 41.) He estimated that he could walk approximately twenty-five feet before requiring a six to ten-minute break or stand for twenty-five to thirty minutes. (*Id.*) Trujillo testified that sitting is painful as well due to pain in his lower back, so he must change position after about twenty minutes. (AR 41-42.) Trujillo changed positions at the hearing, from sitting to standing. (AR 42.)

Trujillo testified that he tries not to lift at all, but he could probably lift five or ten pounds. (*Id.*) He does some stretching and other physical therapy. (AR 43.) Trujillo stated that he has a full-time schedule going to appointments. (*Id.*) He mentioned that he was seeing a podiatrist and an eye doctor, as well as Dr. Hawkins, "constantly." (AR 44.) He estimated that he had been seeing Dr. Hawkins since year 2000. (AR 49.) Trujillo described seeing Dr. Beamer for mental health care. (AR 45.) Other than going to doctor's appointments, Trujillo was visiting his grandmother frequently. (*Id.*) However, he was struggling to do basic housework and cooking. (*Id.*) He stated that he rests about half the day. (AR 47.) He experienced headaches, nausea, and diarrhea from his medications. (AR 47-48.) Trujillo testified that he could do his own grocery shopping, though his sister sometimes helps him. (AR 45.) He also testified that he drives sometimes, but he cannot go alone anymore. (AR 45-46.) Trujillo has a caseworker who helps him budget and pay his bills. (AR 46.)

## **THE ALJ AND APPEALS COUNCIL'S DECISIONS**

I focus this section on those parts of the ALJ's decision that are relevant to the motion to remand. The ALJ determined at step one of the sequential evaluation process that Trujillo had not engaged in substantial gainful activity since his alleged disability onset date of May 11, 2009. (AR 16.) At step two, the ALJ determined that Trujillo suffers from the following severe impairments: asymptomatic HIV, plantar fasciitis, mild generalized osteoarthritis, dysthymia, and a conversion disorder. (*Id.*) At step three, the ALJ found that Trujillo's combination of severe impairments did not equal one of the listed impairments. (AR 17.) The ALJ found that Trujillo has a mild restriction in activities of daily living. (*Id.*) To support this finding, the ALJ referenced Trujillo's function report dated February 8, 2010, in particular pointing out that Trujillo could prepare simple meals, perform light household chores, drive, shop and run errands once per week, attend church four times per week, go out alone, use public transportation, follow written instructions, get along with others, handle stress and changes in routine, read, bake, and do arts and crafts. (*Id.*) The ALJ also found that Trujillo has mild difficulties in social functioning and moderate difficulties with regard to concentration, persistence, or pace. (*Id.*)

The ALJ then determined Trujillo's RFC, finding that he can perform less than the full range of light work, including lifting or carrying up to ten pounds frequently and twenty pounds occasionally; pushing or pulling up to ten pounds frequently and up to twenty pounds occasionally; sitting for up to six hours in an eight-hour workday; standing or walking for up to six hours in an eight-hour workday; frequently climbing stairs and ramps, balancing, stooping, crouching, kneeling, and crawling; and never climbing ladders, ropes, or scaffolds. (AR 18.) In addition, the ALJ found that Trujillo can understand, remember, and carry out detailed, but not complex, instructions. (*Id.*)

In support of this RFC, the ALJ noted that from May 11, 2009, the alleged onset date, through November 29, 2011, Trujillo primarily saw Dr. Hawkins for his physical complaints and Dr. Beamer for his mental complaints. (AR 19.) The ALJ indicated that Dr. Hawkins "documented few specific findings on physical examinations during this period" and that Trujillo only received conservative treatment—which worked "generally" well for him—including medication, injections, and physical therapy. (*Id.*) The ALJ also found it "[n]oteworthy . . . that [Trujillo's] activities were not restricted in any way by Dr. Hawkins" during this period. (*Id.*)

The ALJ concluded that the medical evidence failed to support Trujillo's allegation of disabling symptoms and limitations. (AR 21.) She pointed out that Trujillo's treatment was conservative in nature and worked "generally well" to relieve his symptoms. (*Id.*) Further, the ALJ noted that Trujillo had been noncompliant with his medications, with the exception of his HIV medications, and he missed physical therapy appointments. (*Id.*) The ALJ found that some of Trujillo's statements at the hearing were inconsistent with those he made to his physicians regarding issues relevant to disability. (*Id.*) Such statements involved whether his mood, appetite, and sleep were good and whether he had side effects from his medications. (*Id.*)

With regard to Trujillo's activity limitations, the ALJ found that the record showed that he is not as limited as he claims. (AR 22.) The ALJ again cited Trujillo's 2010 function report. (*Id.*) The ALJ also pointed to comments in Dr. Beamer's records about Trujillo enjoying the weather and getting out in his garden and walking around town, that Trujillo seemed to be doing quite a bit, that he had cleaned out the ditch in the local acequia, that he had gone on vacation to Wisconsin and had a good time despite some anxiety, and that Trujillo's foot pain did not seem to be limiting his activities. (*Id.*)

The ALJ found that, while Trujillo did not engage in substantial gainful activity after his alleged onset date, his part-time work at the local library showed that his daily activities were not as limited as he claimed. (*Id.*) The ALJ stated that a determination of nondisability was consistent with the opinions of the state agency doctors. (*Id.*) The ALJ recognized that Dr. Hawkins "opined that [Trujillo] is limited to less than sedentary work as a result of his mental and physical conditions." (*Id.*) However, the ALJ assigned "little weight" to Dr. Hawkins's opinion because she found it inconsistent with his own treatment records and Trujillo's part-time work after his alleged onset date. (*Id.*)

The ALJ concluded that Trujillo could perform past relevant work as a security guard. (AR 23.) Alternatively, the ALJ determined at step five that Trujillo could perform work existing in significant numbers in the national economy, including a garment folder, a garment bagger, and a cleaner or polisher. (AR 24.) The ALJ therefore determined that Trujillo is not disabled. (*Id.*)

Trujillo appealed the decision to the Appeals Council, but the Council found that Trujillo's reasons for disagreeing with the hearing outcome did not provide a basis for changing the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-2.)

## DISCUSSION

Trujillo makes several arguments for remanding or reversing the ALJ's decision. Trujillo argues that 1) the ALJ did not follow the standard for evaluating a treating physician's opinion, 2) the ALJ improperly rejected Dr. Hawkins's opinions, 3) the ALJ improperly discredited Dr. Hawkins's physical RFC evaluation by referencing the notes of Dr. Beamer, 4) the ALJ erred by not contacting Dr. Hawkins if she had further questions, 5) the ALJ's credibility assessment was

flawed, 6) the ALJ's assessment of Trujillo's activities is unsupported by substantial evidence and inconsistent with the purpose of an evidentiary hearing, and 7) the RFC and hypothetical to the VE failed to include all of the impairments.

### I. Evaluating Dr. Hawkins's Opinion

Pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). "[r]egardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]. Unless [the ALJ] give[s] a treating source's opinion controlling weight under paragraph (c)(2) of this section, [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion."[3] According to Social Security Ruling ("SSR") 96-2p, if a treating physician's opinion is not entitled to controlling weight, the "opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." 1996 WL 374188, at *4 (July 2, 1996).[4]

Trujillo argues that the ALJ did not apply the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when determining the weight to apply to Hawkins's opinion. The ALJ's discussion indicates that she found that Dr. Hawkins's records "documented few specific findings on

---

[3] These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[4] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

physical examinations." (AR 19.) She assigned "little weight" to Dr. Hawkins's opinion because she concluded that it was inconsistent with his treatment records and Trujillo's part-time work after his alleged onset date. (AR 22.) However, upon finding that Dr. Hawkins's opinion was not entitled to controlling weight, the ALJ did not weigh his opinion using the factors provided in 20 C.F.R. §§ 404.1527(c), 416.927(c). While the ALJ's decision indicates some consideration of factors three and four, regarding supportive evidence and consistency with the record, the ALJ does not support her conclusions as to these factors with details or discuss the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; or whether Dr. Hawkins is a specialist in the area in which his opinion was rendered. Accordingly, I find that the ALJ committed legal error in failing to consider and discuss other factors in determining the weight to assign to Dr. Hawkins's opinion. On remand, the ALJ must properly evaluate Dr. Hawkins's opinion and consider it when addressing the RFC stage of the sequential evaluation process. In doing so, the ALJ may keep in mind that "not every factor for weighing opinion evidence will apply in every case." *Oldham v.* Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted).

     Also with regard to the ALJ's treatment of Dr. Hawkins's opinion, Trujillo argues that the ALJ improperly discredited Dr. Hawkins's opinion of Trujillo's RFC by referring to notes by Dr. Beamer, Trujillo's psychiatrist, about Trujillo's physical activities. Further, Trujillo argues that the ALJ improperly relied on the opinions of non-examining physicians. In particular, Trujillo points out that the ALJ referred to opinions by non-examining physicians from two years prior to the hearing.

     "In reaching [her] RFC determination, an ALJ is permitted, and indeed required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file." *Wells v.*

*Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (emphasis in original) (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). Such evidence includes, among other sources, reports of daily activities, recorded observations, lay evidence, and evidence from attempts to work. SSR 96-8p, 1996 WL 374184, at *5. As to the opinions of doctors, the opinion of a doctor who examined the claimant is generally entitled to more weight than that of a doctor who did not. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of . . . an agency physician who has never seen the claimant is entitled to the least weight of all."). The ALJ "may not ignore these opinions and must explain the weight given to the opinions in their decisions" by using the same six factors previously listed. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

I do not find that the ALJ erred in referring to Dr. Beamer's notes about Trujillo's reported physical activities to discredit in part Dr. Hawkins's opinion. As noted, the ALJ must rely on all of the evidence of record in making her RFC determination. *Wells*, 727 F.3d at 1071. Further, I have already determined that the ALJ must reassess Dr. Hawkins's opinion pursuant to the factors set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ shall also consider the opinions of other doctors pursuant to these factors.

Trujillo also argues, without citations, that the ALJ's rejection of Dr. Hawkins's "solidly-based opinions" was inconsistent with prevailing case law and unsupported by substantial evidence. (Doc. 24 at 7.) I have already determined that the ALJ erred at the RFC stage by failing to consider and discuss the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). A reassessment of Dr. Hawkins's opinion pursuant to these factors may alter the ALJ's decision, so I do not consider at this time whether Dr. Hawkins's opinions were solidly based or whether the ALJ's assignment of "little weight" is unsupported by substantial evidence.

Finally, Trujillo argues that the ALJ erred by not contacting Dr. Hawkins if she had any further questions and by considering it probative that Dr. Hawkins did not place restrictions on Trujillo's activities anywhere in his treatment records. "Under 20 C.F.R. § 404.1512(e), the ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). The record as a whole does not reflect that evidence was inadequate to determine whether Trujillo was disabled. As such, I do not find error in the ALJ's failure to recontact to Dr. Hawkins; I only instruct the ALJ to do so upon remand if the ALJ perceives the evidence to be inadequate.

## II.     Credibility Assessment

Trujillo argues that there was not substantial evidence to support the ALJ's finding that Trujillo's work reading to children at the local library for five hours per week showed that his activities were "somewhat greater than [Trujillo] has generally alleged." (*See* AR 22.) The regulations state that "[e]ven if the work [a claimant] ha[s] done was not substantial gainful activity, it may show that [the claimant] [is] able to do more work than [he] actually did." 20 C.F.R. § 404.1571. Accordingly, I do not find error in the ALJ's consideration of Trujillo's work at the local library to conclude that Trujillo's daily activities were somewhat greater than alleged.

Trujillo also argues that the ALJ erred by basing her evaluation of his daily activities solely on his function report dated February 8, 2010—failing to consider Trujillo's testimony at the hearing. It is not true that the ALJ only considered Trujillo's 2010 function report in her evaluation of his daily activities; rather, she also cited notes by Dr. Beamer from 2011 about Trujillo's outdoor activities, his ability to get around, and a vacation in Wisconsin. (*See* AR 22.) However, it is true that the ALJ did not discuss Trujillo's testimony at the hearing, which

reflected significantly greater limitations on his daily activities. The ALJ must "issue a decision based on the preponderance of the evidence in the hearing record." 20 C.F.R. § 404.929. The ALJ's decision does not reflect that she considered Trujillo's testimony about his daily activities. The ALJ may not "pick and choose" that information which supports a finding of non-disability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). I therefore find error in the ALJ's failure to consider and discuss Trujillo's testimony about his daily activities and limitations. Upon remand, the ALJ shall address Trujillo's testimony regarding his activities and limitations in determining Trujillo's RFC.

### III.     Remaining Arguments

Trujillo makes a vague argument that the RFC and hypothetical provided to the VE failed to reflect all of Trujillo's impairments. In particular, Trujillo asserts that the limitation in the RFC to being able to "understand and remember, and carry out detailed, but not complex, instructions" did not adequately reflect Trujillo's conversion disorder. However, Trujillo has provided no specific support for this proposition, so I will not consider it here.

Finally, Trujillo argues that the sequence of the medical opinion discussion was flawed because it was not sequenced in accordance with the proper weight to be accorded each physician. Trujillo argues specifically that it was not until the end of four pages of discussion about medical evidence that the ALJ mentioned Dr. Hawkins. However, the ALJ did discuss Dr. Hawkins earlier in her decision. (*See* AR 19.) Furthermore, there is no requirement that doctor's opinions be discussed in any particular order. I find this argument to be without merit.

### CONCLUSION

I conclude the ALJ erred in her evaluation of Dr. Hawkins's opinion in that she did not consider and discuss the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) for according

weight to a medical opinion. The ALJ also erred by failing to consider Trujillo's hearing testimony in examining his daily activities. Accordingly, this case is remanded to the SSA for further proceedings consistent with this opinion.

    IT IS SO ORDERED.

                                          _____
                                          William P. Lynch
                                          United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.